# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT DESHIELDS,
    Plaintiff,

v.

COMMONWEALTH,
DEPARTMENT OF
CORRECTIONS, *et al.*,
    Defendants.

No. 1:19-cv-198

(Judge Rambo)

## MEMORANDUM

This matter is before the Court pursuant to the motion for summary judgment filed by Defendants Commonwealth, Department of Corrections ("DOC"), Kyle Confer ("Confer"), and Karen Merritt-Scully ("Merritt-Scully"). (Doc. No. 18.) Despite being directed to do so (Doc. No. 21) and receiving an extension of time (Doc. Nos. 22, 23), *pro se* Plaintiff Robert DeShields ("Plaintiff") has not responded to the motion for summary judgment. Accordingly, because the time period for Plaintiff to respond has expired, Defendants' motion for summary judgment is ripe for disposition.

## I.    BACKGROUND

While incarcerated at the State Correctional Institution in Coal Township, Pennsylvania ("SCI Coal Township"), Plaintiff initiated the above-captioned action by filing a complaint pursuant to 42 U.S.C. § 1983 as well as the Religious Land Use and Institutionalized Persons Act ("RLUIPA") against Defendants in the Court

of Common Pleas for Northumberland County, Pennsylvania, on December 8, 2018. (Doc. No. 1-2.) Defendants removed the matter to this Court on February 5, 2019. (Doc. No. 1.) Plaintiff subsequently filed an amended complaint on February 27, 2019. (Doc. No. 6.) He alleges that Defendants violated his rights under the First Amendment and RLUIPA by mandating that he undergo tuberculosis testing via a PPD injection, which he argues violated his religious beliefs. (*Id.*) On May 8, 2019, Plaintiff notified this Court that he had been released from custody. (Doc. No. 10.)

After engaging in discovery, Defendants filed their motion for summary judgment and supporting materials, arguing, *inter alia*, that Plaintiff failed to exhaust his administrative remedies. (Doc. Nos. 18, 19, 20.) In its December 5, 2019 Order, the Court informed the parties that, pursuant to *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018), it would consider the exhaustion issue in the context of summary judgment, and by doing so, would consider matters outside the pleadings in its role as factfinder. (Doc. No. 21.) Accordingly, the Court directed Plaintiff to respond to Defendants' motion within twenty-one (21) days. (*Id.*) As noted above, however, Plaintiff has not responded.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.* at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the

nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White*, 826 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id.* (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to

4

be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. *See Sanders v. Beard*, No. 09-CV-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); *Thomas v. Norris*, No. 02-CV-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

## III. STATEMENT OF MATERIAL FACTS[1]

---

[1] The Local Rules of Court provide that in addition to filing a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried." M.D. Pa. L.R. 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements. *Id.* Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. *See id.* Unless otherwise noted, the factual background herein is taken from Defendants' Rule 56.1 statement of material facts. (Doc. No. 19.)

Plaintiff did not file a response to Defendants' statement of facts in compliance with M.D. Pa. L.R. 56.1. However, he has filed a verified amended complaint, which may be treated as an affidavit in opposition to summary judgment. *See Ziegler v. Eby*, 77 F. App'x 117, 120 (3d Cir. 2003) (noting that "the complaint was not verified, thereby precluding the District Court from treating it as the equivalent of an affidavit for purposes of Federal Rule of Civil Procedure 56(e)"); *Reese v. Sparks*, 760 F.2d 64, 67 (3d Cir. 1985) (treating verified complaint as an affidavit on summary judgment motion); *see also Boomer v. Lewis*, No. 06-850, 2009 WL 2900778, at *2 n.4 (M.D. Pa. Sept. 9, 2009) ("A verified complaint may be treated as an affidavit in support of or in

5

DOC policy DC-ADM 13.2.1 requires that inmates who refuse tuberculosis testing must be kept in administrative custody. (Doc. No. 15 ¶ 16.) The only exception to the policy regards inmates who have been previously documented to have a reaction to the test by health care professionals. (*Id.* ¶ 17.) Plaintiff did not qualify for this exception. (*Id.* ¶ 18.) The DOC policy was promulgated to ensure the safety of staff, visitors, and inmates from the spread of tuberculosis. (*Id.* ¶¶ 19, 22.)

On November 13, 2017, Plaintiff was summoned to the medical department, where Defendant Confer told him that he would have to take the tuberculosis test. (Doc. No. 1 ¶ 9.) Plaintiff informed Defendant Confer that the tuberculosis "PPD" injection would violate his religious tenets as a Muslim and asked if he could "submit to a chest x-ray or sputum sample." (*Id.*) Defendant Confer told Plaintiff that alternative testing was not offered. (*Id.* ¶ 10.) Plaintiff was given the option of taking the test or going into administrative custody, and he chose to take the test. (Doc. No. 19 ¶ 24.) Plaintiff also took the test again in 2018. (*Id.* ¶ 25.)

---

opposition to a motion for summary judgment if the allegations are specific and based on personal knowledge."). However, this Court is not "required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question." *Hammonds v. Collins*, Civ. No. 12-236, 2016 WL 1621986, at *3 (M.D. Pa. Apr. 20, 2016) (citing *Brooks v. Am. Broad. Co.*, 999 F.2d 167, 172 (6th Cir. 1993)). Accordingly, unless otherwise noted, the Court deems the facts set forth by Defendants to be undisputed. *See* M.D. Pa. LR 56. 1; Fed. R. Civ. P. 56(e)(2).

Plaintiff filed a grievance asserting that being compelled to take the tuberculosis test violated his religious rights. (Doc. No. 1 ¶ 20.) Plaintiff was aware of his responsibility to properly exhaust his administrative remedies. (Doc. No. 19 ¶ 9.) Pursuant to DC-ADM 804, the DOC's policy setting out the grievance procedure, any inmate appealing a grievance to final review is responsible for providing all documentation relevant to the appeal, including: (1) a legible copy of the initial grievance, (2) a copy of the initial review response/rejection and/or remanded initial review response/rejection, (3) a legible copy of the inmate's appeal to the facility manager, (4) a copy of the facility manager/designee's decision and/or remanded facility manager/designee's decision, and (5) a written appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). (*Id.* ¶ 11.) "[F]ailure to provide any of the documentation noted above may result in the appeal being dismissed." (*Id.*) Plaintiff did not provide a copy of the facility manager's appeal decision to SOIGA, and his final review appeal was dismissed. (*Id.* ¶ 12.)

## IV. DISCUSSION

Defendants argue that they are entitled to summary judgment because: (1) Plaintiff failed to fully exhaust his administrative remedies and (2) Defendants had legitimate medical and institutional reasons for requiring the tuberculosis testing.

7

(Doc. No. 20 at 2-3.) The Court first considers Defendants' arguments regarding Plaintiff's failure to exhaust.

Under the PLRA, a prisoner must pursue all available avenues for relief through the prison's grievance system before bringing a federal civil rights action. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). Section 1997(e) provides, in relevant part "[n]o action shall be brought with respect to prison conditions under section 1983 of the Revised Statutes of the United States, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. § 1997(e). The exhaustion requirement is mandatory. *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *Booth*, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"). Moreover, while Plaintiff was released from prison after filing the above-captioned case (Doc. No. 10), he is still bound by the exhaustion requirement because he has raised claims concerning events that occurred prior to his release. *See Ahmed v. Dragovich*, 297 F.3d 201, 210 (3d Cir. 2002).

The United States Court of Appeals for the Third Circuit has further provided that there is no futility exception to § 1997e's exhaustion requirement. *Nyhuis v. Reno*, 204 F.3d 65, 75-76 (3d Cir. 2000). Courts have typically required across-the-board administrative exhaustion by inmates who seek to pursue claims in federal court. *Id.* Additionally, courts have imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. *Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004). Courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. *See e.g., Bolla v. Strickland*, 304 F. App'x 22 (3d Cir. 2008); *Booth v. Churner*, 206 F.3d 289 (3d Cir. 2000).

This broad rule favoring full exhaustion allows for a narrowly defined exception. If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. *See Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000). However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." *Davis v. Warman*, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be

excused "under certain limited circumstances," *Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." *Warman*, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts. Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. *Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005). Nor can an inmate avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him. *Warman*, 49 F. App'x at 368. Thus, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust. *Casey v. Smith*, 71 F. App'x 916 (3d Cir. 2003); *see also Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing.'") (citations omitted).

Recently, the Supreme Court considered what renders administrative remedies unavailable to an inmate such that a failure to exhaust can be excused. *See Ross v. Blake*, 136 S. Ct. 1850 (2016). The Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 1859. First, an administrative procedure is not available "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, a procedure is not available when it is "so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, a procedure is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misinterpretation, or intimidation. *Id.* at 1860.

The Third Circuit recently joined other circuits to hold "that administrative remedies are not 'available' under the PLRA where a prison official inhibits an inmate from resorting to them through serious threats of retaliation and bodily harm." *Rinaldi v. United States*, 904 F.3d 257, 267 (3d Cir. 2018). To defeat a failure-to-exhaust defense based on such threats, "an inmate must show (1) that the threat was sufficiently serious that it would deter a reasonable inmate of ordinary

firmness and fortitude from lodging a grievance and (2) that the threat actually did deter this particular inmate." *Id.* at 269.

Finally, failure to exhaust is an affirmative defense that must be pled by the defendant. *Jones v. Bock*, 549 U.S. 199, 216 (2007). "In a motion for summary judgment, where the movants have the burden of proof at trial, 'they [have] the burden of supporting their motion for summary judgment with credible evidence . . . that would entitle [them] to a directed verdict if not controverted at trial.'" *Foster v. Morris*, 208 F. App'x 174, 179 (3d Cir. 2006) (quoting *In re Bressman*, 327 F.3d 229, 237 (3d Cir. 2003) (internal quotations omitted)). If "the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." *Id.* (quoting *Nat'l State Bank v. Fed. Reserve Bank of N.Y.*, 979 F.2d 1579, 1582 (3d Cir. 1992) (internal quotations omitted)).

Here, Defendants argue that Plaintiff's grievance record demonstrates that he failed to properly exhaust his administrative remedies prior to filing the instant action because he did not follow the proper procedures for submitting his final review appeal to SOIGA. (Doc. No. 19 ¶¶ 11-13; Doc. No. 20 at 4-5.) The record before the Court establishes that while Plaintiff did pursue a final appeal to SOIGA,

he failed to include a copy of the facility manager's appeal decision with his appeal. As a result, Plaintiff's appeal to SOIGA was dismissed. (Doc. No. 19 ¶ 12.)

Plaintiff has not responded to Defendants' motion for summary judgment. However, in his verified amended complaint, he avers that he "exhausted all administrative remedies regarding the matters described in the Complaint." (Doc. No. 6 at 3.) He references Exhibit 1, which consists of copies of his grievances, of his initial complaint in support. (*Id.*) Plaintiff's own exhibit, however, indicates that his appeal to SOIGA was dismissed for failure to included required documentation. (Doc. No. 1-2 at 20.) This Court and the Third Circuit have recognized that "[w]hen the SOIGA dismisses an inmate's grievance for failure to provide the required documentation with the appeal, dismissal of the related claims in federal court is appropriate due to lack of PLRA exhaustion." *Fattah v. Rackovan*, No. 3:10-cv-1607, 2020 WL 708916, at *4 (M.D. Pa. Feb. 12, 2020); *see also Sanders v. Sec'y Pa. Dep't of Corr.*, 602 F. App'x 54, 57 (3d Cir. 2015) (concluding that inmate plaintiff failed to exhaust his administrative remedies when he failed to provide SOIGA with all required documentation for proper review).

Plaintiff, therefore, has not refuted the defense that he failed to properly exhaust his claims against them. Accordingly, because the PLRA requires full and proper exhaustion prior to the initiation of Plaintiff's claims in federal court, and this

Court cannot excuse compliance with those requirements, Defendants' motion for summary judgment will be granted on the basis that Plaintiff failed to properly exhaust his administrative remedies as to his claims against them.[2]

## V. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Doc. No. 18) will be granted. An appropriate Order follows.

s/ Sylvia H. Rambo
United States District Judge

Date: March 17, 2020

---

[2] Given the Court's conclusion that Plaintiff did not properly exhaust his administrative remedies, the Court declines to address Defendants' alternative argument that they are entitled to summary judgment because they had "legitimate medical and institutional reasons" for requiring tuberculosis testing. (Doc. No. 20 at 3.) The Court notes, however, that Plaintiff's release from incarceration moots his RLUIPA claim. *See Varsanyi v. Piazza*, No. 3:10-cv-2072, 2015 WL 1643036, at *7 n.3 (M.D. Pa. Apr. 9, 2015) (noting that only injunctive relief is available under RLUIPA and that claims for injunctive relief become moot upon release from incarceration).